## PATENT OFFICE PROFESSIONAL ASSOCIATION, Petitioner,

v.

## FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 88–1361.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1989.

Decided April 7, 1989.

---

Peter B. Broida, Washington, D.C., for petitioner.

James F. Blanford, Atty., Federal Labor Relations Authority, with whom William E. Persina, Acting Sol., Federal Labor Relations Authority, Washington, D.C., was on the brief, for respondent. Ruth E. Peters, Washington, D.C., also entered an appearance for respondent.

Before ROBINSON, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Patent Office Professional Association ("union") petitions this court to review a decision by the Federal Labor Relations Authority ("FLRA" or "Authority"). At issue is the Authority's decision finding that the United States Patent and Trademark Office ("agency") did not commit any unfair labor practices in violation of the Federal Service Labor Management Relations Statute ("the Statute"), 5 U.S.C. §§ 7101–7135 (1982 & Supp. IV 1986). In proceedings before the Authority, the union charged that the agency had violated the Statute by: (1) failing to comply with an interest arbitration award allocating official time for union representatives; (2) unilaterally changing the continuation-in-service requirement for employees enrolled in law school; and (3) modifying the practice of granting official time without affording the union an opportunity to bargain. The FLRA found these claims to be without merit.

We grant the petition for review with respect to the claim concerning bargaining over alleged changes in the grant of official time. Our review of the record indicates that the union did not "waive" any right to bargain over these changes, and thus we reverse the FLRA ruling on this point and remand for further proceedings consistent with this opinion. We deny the petition for review as to all other claims. The FLRA determinations with respect to the interest arbitration award and the con-

tinuation-in-service requirement are supported by substantial evidence, and we do not find them "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §§ 706(2)(A), 7123(c) (1982); *National Treasury Employees Union v. FLRA*, 826 F.2d 114, 121 (D.C.Cir.1987). Accordingly, we affirm the judgment of the Authority on these points.

I. BACKGROUND

A. Facts

In 1972, the Patent Office Professional Association, which represents approximately 1400 professional employees of the Patent and Trademark Office, executed an agreement with that agency governing working conditions. The agreement contained a provision covering "official time" allowance—paid time for union officials for processing grievances and pursuing other representational activities. Under the contract, union officials were allowed to spend up to eight hours a week processing grievances; in practice, however, almost all claims for official time exceeding eight hours a week were honored by the agency. *See United States Patent and Trademark Office & Professional Association*, 31 F.L.R.A. 960, 964 (A.L.J. Decision).

On June 10, 1981, the agency issued a memorandum informing the union that, effective July 1 of that year, the specific terms of the agreement with respect to official time would be enforced. The union filed a grievance over this proposed change in practice, which was eventually settled by the parties in a Memorandum of Understanding ("MOU"). The MOU, executed on December 22, 1981, provided that the agency would withdraw its memorandum announcing its intention to enforce the contractual provisions concerning official time, the union would withdraw its grievance, and that the parties recognized that the issue of official time was bargainable. *See id.* at 964–65.

In September 1982, the union and the agency began negotiations for a new collective bargaining agreement. After unsuc-

cessful negotiations, the agency requested the services of the Federal Service Impasses Panel ("the Panel"), to resolve the bargaining impasse reached by the parties on, among other things, the ground rules for substantive bargaining. *Id.* at 965. The Panel directed the parties to mediation-arbitration to resolve the impasse.

On April 10, 1984, an arbitrator issued a decision "Regarding Ground Rules Agreement." The arbitrator's decision included, *inter alia,* ground rules covering "official time" for bargaining, and also rules covering bargaining over "impact and implementation of future management changes," as follows:

> (1) Size of Bargaining Teams
>
> (a) Except as stated in Paragraph 2(e) each Negotiating Team shall be composed of not more than six members. The Association Team, while engaged either in research or preparation for, or actual negotiations for the basic Agreement, shall be authorized a reasonable amount of official time, not to exceed forty (40) hours per calendar week.
>
> (2) Attendance—Priorities—Other Negotiations
>
> \*     \*     \*     \*     \*     \*
>
> (f) Except for changes in working conditions mandated by statute or government-wide regulation, negotiations regarding impact and implementation of future management changes will be combined with the negotiations for the ongoing basic Agreement. Except where the implementation is required by an overriding exigency, the implementation of the impact and implementation bargaining shall be deferred until there is final agreement on, and the execution and approval of, the negotiated basic Agreement.

31 F.L.R.A. at 965–66.

The ground rules further provided that, if the parties failed to reach agreement after five months of "good faith" bargaining, they would submit a report to the arbitrator on the status of the negotiations. When this time had passed without successful resolution of the issues, the parties returned to the arbitrator for a final decision, which was issued on May 20, 1985. *Id.* at 966–67. The arbitrator rejected the agency's proposals and ordered the parties to continue to bargain in accordance with the relevant terms of the April 10, 1984, Ground Rules Agreement. On June 7, 1985, the agency issued a memorandum informing the union that it interpreted the arbitrator's final decision as saying that the agency was no longer subject to those provisions of section 2(f) of the Ground Rules Agreement that precluded management from unilaterally implementing certain changes. *Id.* at 967. Accordingly, the agency stated that it would grant official time only for actual negotiations over the basic agreement and not for any preparation time for negotiations. The agency further informed the union that it would begin to enforce the provisions of the 1972 basic agreement concerning official time for representation. *Id.* at 969. These changes were to become effective on July 7, 1985.

On or about June 18, 1985, union agents met with agency officials and requested that the changes concerning official time be deferred until questions about their legality were resolved. *Id.* The agency refused the request. On June 21, 1985, the agency issued another memorandum outlining the amount of official time that would be alloted for union officials. The changes in official time were implemented on or about July 7, 1985. The new practices remained in effect until May 1, 1986, when a new basic collective bargaining agreement became effective.

The agency also informed its employees, on June 24, 1985, without prior notification to the union, of a change in policy concerning its Law School Tuition Assistance Program. Under the program, which is administered in accordance with 5 U.S.C. § 4108 (1982), the Patent Office provides funds for patent examiners to take law school courses during nonworking hours. In return, the employee is required to enter into a "continued service agreement," which commits the employee to continue his or her employment with the agency for a period of one month for every credit hour

funded, or to reimburse the agency for its expenses. Under the agency's announced policy, time for additional courses could not be paid back concurrently with time for a course taken at an earlier semester; instead, the payback period would be tacked on sequentially. *See id.* at 972–73.

## B. Proceedings Below

### 1. *Administrative Law Judge*

In its first complaint, docketed as Case No. 3–CA–50396, J.A. 52–56, the union filed unfair labor practice charges against the agency for its June 7, 1985, memorandum announcing changes in official time practice for union negotiators and representatives. The charges, as amended, alleged that the agency had violated the terms of the arbitration award and had failed to bargain in good faith in violation of sections 7116(a)(1), (5), (6) and (8) of the Statute. J.A. 48.

In the second complaint, docketed as Case No. 3–CA–60086, the union advanced additional charges against the agency. J.A. 66, 70. First, the union alleged that the agency had unilaterally changed its past practices concerning official time for representation in violation of the Statute's requirement that the agency bargain in good faith over such changes. Second, the union alleged that the changes in official time violated the parties' 1981 MOU. And, finally, the union alleged that the agency had unilaterally changed the policy concerning the Law School Tuition Assistance Program in violation of sections 7116(a)(1), (5), (6), (7) and (8) of the Statute. J.A. 59, 70–71.

The cases were consolidated for hearing before an Administrative Law Judge ("ALJ"). With respect to Case No. 3–CA–50396, the ALJ first rejected the agency's claim that the arbitrator's "Final Decision" was ambiguous and susceptible to differing interpretations, and that its actions were consistent with one interpretation of the award. The ALJ found that the agency had violated the arbitrator's award by unilaterally restricting the union's use of official time for negotiations. 31 F.L.R.A. at 975–76. The ALJ determined that, because the agency was required to adhere to the provisions covering official time, the agency should reimburse the union for official time that was improperly denied. *Id.* at 984. Moreover, the ALJ decided that the union's complaint did not encompass the changes in official time for representational purposes, noting that these changes came within the scope of the complaint in Case No. 3–CA–60086. *Id.* at 976.

With respect to Case No. 3–CA–60086, the ALJ found that the agency had timely notified the union of proposed changes in granting official time for representational activities. The ALJ ruled that the union's request that the agency defer implementation of the changes until certain legal questions were resolved did not constitute a request to bargain over the changes. *Id.* at 978. The ALJ also found no merit in the allegation that the agency's action was a repudiation of the 1981 MOU. *Id.* at 979 n. 22. And finally, the ALJ found that the agency's change in the Law School Assistance Program was made in order to conform the agency's practice to the governing law, and thus was not a subject for bargaining.[1] 31 F.L.R.A. at 981.

### 2. *Federal Labor Relations Authority*

The union and the General Counsel filed exceptions to the ALJ's decision with the FLRA. The union claimed that the ALJ had erred in: (1) determining that the complaint in Case No. 3–CA–50396 regarding compliance with the arbitration award was directed solely at official time for negotiations and not for other representational

1. The governing law, 5 U.S.C. § 4108, requires that an employee continue in the agency's service for a period of at least three times the length of the training or reimburse the agency for its expenses. By allowing an employee to "pay back" the requisite time concurrently with time owed for previous training, the ALJ found that the employee would fail to continue in the service for three times the training period. Accordingly, the ALJ found that the agency was right to revoke its policy of allowing time to be paid back concurrently. Nonetheless, the ALJ ruled that the agency was required to bargain over the impact and implementation of the change, and that the agency had violated the Statute in failing to do so. 31 F.L.R.A. at 983.

activities; (2) finding that the changes in the Law School Tuition Assistance Program were made in order to conform with governing law and regulation; and (3) failing to find a violation of the Statute when the agency implemented changes concerning official time for representational activities without affording the union the opportunity to bargain.

On review of the record and the ALJ's decision, the FLRA adopted the ALJ's determinations.[2] *See United States Patent and Trademark Office & Patent Official Professional Association,* 31 F.L.R.A. 952 (1988). First, the FLRA agreed with the ALJ that the scope of the complaint in Case No. 3–CA–50396 was limited to official time for union negotiators. *Id.* at 954. Second, the FLRA found that the changes in the Law School Tuition Assistance Program were made in order to conform to governing law, and that the impact and implementation of the program was a subject for bargaining. *Id.* at 955. Third, the FLRA found no violation of the good faith bargaining requirement of the Statute in Case No. 3–CA–60086 due to the agency's changed enforcement of official time provisions for representational activities. *Id.* at 954–55. The union filed the instant petition.

## II. ANALYSIS

■ Our review of FLRA decisions is narrow. We set aside FLRA action only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), 7123(c); *National Treasury Employees Union,* 826 F.2d at 121. On the record before us, we find only the union's third claim, that it did not waive any right to bargain over official time changes, worthy of reconsideration. As for the union's other claims, we affirm the FLRA's rulings. In particular, the union claims that the FLRA arbitrarily failed to consider its allegations that the agency had violated the arbitration award by denying official time for representational duties. We find the FLRA's determination entirely reasonable that the complaint did not facially allege this violation and, therefore, that it did not have to adjudicate the claim. The complaint had alleged a violation of the arbitration award, which appears to concern official time practices for negotiations and not official time practices for other representational duties. Although "[t]he union's broad construction of the complaint may be colorable, ... the Authority's narrower construction is by no means arbitrary or capricious." *AFGE, Local 1923 v. FLRA,* 796 F.2d 530, 533 (D.C.Cir.1986). Accordingly, we uphold the Authority on this point.

■ Similarly, with respect to the law school claim, we reject the petitioner's claim that the agency violated the Statute by not bargaining over substantive changes in its Law School Tuition Assistance Program. We agree with the FLRA that by prohibiting concurrent service, the agency had simply modified its continuation-in-service requirement to conform with the governing law. The agency therefore had no duty to bargain over these changes. *See AFGE, Local 1923,* 796 F.2d at 532.

■ The union also claims that the FLRA improperly found that the union waived any right to bargain over proposed changes in official time for representational activities. We agree.

The ALJ found, and all parties agree, that the union met with the agency and requested that the agency not implement the changes until a ruling was obtained as to their legality. *See* 31 F.L.R.A. at 969. The union's protest against the change and its inquiry into legal remedies did not waive its right to bargain, as much as initiate it. Moreover, the union actually filed an unfair labor practice complaint, charging that the change in the official time practice was a violation of the Memorandum of Under-

---

**2.** The FLRA concluded that the agency violated the Statute by failing to comply with the arbitrator's award concerning official time for negotiations and by failing to bargain over the impact of its decision to change the continuation-in-service requirement. The FLRA modified the ALJ's order only sightly; the changes are not relevant to the instant proceeding. *See* 31 F.L. R.A. at 955–57.

standing and the Statute's requirement that the parties bargain in good faith. As counsel for the FLRA conceded in oral argument, the principal remedy that would be available to the union pursuant to its unfair labor practice charge is an order for the agency *to bargain* over the change. Thus, when the union protested the agency's proposed change in official time, then sought a delay in the change pending resolution of disputed legal issues, and then filed an unfair labor practice charge seeking to block the agency's unilateral change, it surely did not "waive" whatever right it had to bargain over official time for representational activities. Indeed, the Authority's position on this point defies comprehension.

Accordingly, we reverse and remand the FLRA determination that the union waived any right to bargain over the official time change. On remand, in considering whether the agency violated a duty to bargain over proposed changes in the practice covering official time, the FLRA should consider the following questions: Was there any collective bargaining agreement in effect at the time when the alleged change was implemented? If the agreement was in effect, and the agency's proposed action was consistent with its terms (but arguably inconsistent with the parties' practices), did this constitute a "change" in a condition of employment over which the union had a right to bargain? Finally, did the dispute over official time raise an arbitral issue under the parties' agreement and, if so, was the union required to pursue arbitration in seeking a resolution of its grievance? We leave these and other questions for determination by the FLRA on remand. We decide only that the union did not "waive" whatever rights it may have had to bargain over official time.

### CONCLUSION

For the foregoing reasons, we reverse the FLRA's determination that the union waived any right to bargain over the proposed changes in official time allotments and remand that part of the FLRA decision for further proceedings consistent with this opinion.

*So ordered.*