**FEDERAL DEPOSIT INSURANCE CORPORATION, Washington, D.C., Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**National Treasury Employees Union, Intervenor.**

No. 91–1385.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 17, 1992.

Decided Nov. 6, 1992.

**1494**

Marc Richman, Attorney, Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Attorney, Dept. of Justice, were on the brief, for petitioner.

Pamela P. Johnson, Attorney, Federal Labor Relations Authority, with whom William E. Persina, Sol. and William R. Tobey, Deputy Sol., Federal Labor Relations Authority, were on the brief, for respondent. Jill Griffin, Attorney, Federal Labor Relations Authority, also entered an appearance for respondent.

Barbara A. Atkin, with whom Gregory O'Duden, was on the brief, for intervenor. Cary P. Sklar and David F. Klein entered appearances for intervenor.

Before: EDWARDS, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC" or "agency") petitions this court to review a decision by the Federal Labor Relations Authority ("FLRA" or "Authority"). The Authority held that the FDIC violated its duty to bargain under the Federal Service Labor Management Relations Statute ("FSLMRS" or "Statute"), 5 U.S.C. §§ 7101–7135 (1988), by unilaterally changing conditions of employment relating to (1) bi-weekly premiums paid by FDIC employees enrolled in the employer's family health insurance plan, and (2) the month during which the "open season" for the election of health insurance would be held. The National Treasury Employees Union ("NTEU" or "union"), on behalf of FDIC employees who are represented by the union, sought to bargain over the proposed changes before they were implemented; however, the FDIC declined, claiming the disputed subjects were non-negotiable. The NTEU then filed unfair labor practice charges with the FLRA, asserting that insurance premium charges and "open seasons" were mandatory subjects of bargaining under the FSLMRS.

Following the Supreme Court's decision in *Fort Stewart Schools v. FLRA,* 495 U.S. 641, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990) ("conditions of employment" subject to the duty to bargain under the Statute include wages and fringe benefits, except with respect to employees whose wages and fringe benefits are fixed by law), the FLRA found the complaints against the FDIC to be meritorious. The Authority, pursuant to a *status quo ante* remedy, ordered the agency to reinstate the practices that were in effect in 1987 before the occurrence of the unilateral changes, make whole any employees who were adversely affected by the changes, and negotiate with the union over the disputed subjects.

On the record before us, we hold that the Authority was justified in finding the FDIC guilty of a refusal to bargain, and, also, that the Authority acted within its discretion in issuing a *status quo ante* remedy. We therefore deny the petition for review.

## I. BACKGROUND

The facts in this case are undisputed and largely stipulated, as follows:

The events giving rise to this case began when the insurance company which underwrites the Agency's [FDIC's] own health insurance plan notified the Agency that there would be rate increases for both the single and family options for the plan's next renewal period, due to expected increases in the costs of providing medical care. The Agency determined that it would be advantageous to allow the renewal period for its own plan to coincide with the open season for the other Federal employee health benefit plans, and extended the 1987–88 enrollment period accordingly. The Agency decided to absorb the premium increase for those subscribing to the single option in the plan, as part of the Agency's share of the total premium. However, the Agency passed on to employees a portion of the premium increase for family option coverage equivalent to the same percentage of total cost then paid by those with family option.[1] The Agency decided to make these changes on or about July 16, 1987, and notified employees of these changes by issuance of Bulletin No. 2811 dated August 5, 1987.

By letter of August 31, 1987, the Union requested that the Agency refrain from implementing any proposed rate or benefit changes outlined in Bulletin No. 2811 until negotiations concerning the issue were completed. By letter dated September 3, 1987, to FDIC's New York Region, the Union requested to begin negotiations concerning the Union's proposal found negotiable in *NTEU, Chapter 207*,[2] and the proposed changes in the Agency's health insurance plan outlined in FDIC Bulletin 2811. On September 3, 1987, the Union submitted the same request to FDIC's Boston Region. By letter dated September 11, 1987, the Union contacted the Agency's Chicago Region requesting negotiations on the changes outlined in the bulletin and that the Agency refrain from implementing the announced changes.

The Agency refused to honor the requests to bargain and implemented the changes as announced in its bulletin. The parties stipulated that no bargaining has occurred between them regarding these changes to the Agency's health insurance plan.

*FDIC and NTEU*, 41 F.L.R.A. 272, 275–76 (1991).

In December, 1987, and February and March, 1988, the FLRA issued four separate unfair labor practice complaints against the FDIC's headquarters and against the three regional offices contacted by the NTEU. The FLRA charged that the FDIC had unlawfully refused to bargain by unilaterally changing conditions of employment with respect to mandatory subjects of bargaining. The FDIC and the NTEU stipulated to the facts and waived their right to a hearing before an administrative law judge. At the agency's request, the four complaints were consolidated. The FLRA then held the consolidated complaint in abeyance pending a judicial determination of the negotiability of health benefits.

In 1990, while the consolidated cases were still being held in abeyance, the Supreme Court ruled that, under 5 U.S.C. §§ 7102 and 7103(a)(14) (1988), the government has a duty to bargain with its unions over wages and fringe benefits. *See Fort Stewart*, 495 U.S. at 644–50, 110 S.Ct. at 2045–48. Following the Court's decision in *Fort Stewart*, the FLRA considered this case on the stipulated record before it.

---

1. Under the agency's proposed plan, the "self-only" insurance premiums were to be increased from $30.18 to $38.97 bi-weekly, and the "family-plan" premiums were to be increased from $83.45 to $107.76 bi-weekly. The agency intended to continue to pay, as it had since 1985, the full cost of premiums for employees with "self-only" coverage; however, the portion of the bi-weekly premiums to be paid by employees with "family-plan" coverage was to be increased from $13.32 to $17.20. In other words, the agency intended to continue to pay 100% of the premiums for "self-only" coverage and approximately 84.04% of the premiums for "family-plan" coverage.

2. On August 27, 1987, in *NTEU, Chapter 207 and FDIC*, 28 F.L.R.A. 738, 740 (1987), the FLRA ruled that "all benefit systems," including health benefits, were negotiable conditions of employment.

The Authority rejected the FDIC's claim that it had no obligation to bargain because the agency's health insurance plan is not a condition of employment. On this point, citing *Fort Stewart*, the FLRA held that "the Agency was required to negotiate over the substance, impact and implementation of its decision to change its health plan." *FDIC and NTEU*, 41 F.L.R.A. at 278.

The Authority also rejected the FDIC's claim that "no change giving rise to a bargaining obligation occurred" because "employees enrolled in [the] family option of its health insurance plan still pay the same percentage of the premium." *Id.* at 276–77. In response to this argument, the Authority found that

> the Agency's absorption of the entire increase in the health insurance premium for employees in the self-only option, but only partial absorption of the increase in the premium for employees enrolled in the family option, constituted a change in the conditions of employment for employees enrolled in the family option plan. Notwithstanding the fact that the Agency's percentage contribution toward the total insurance premium remained the same for both the self-only and family options, the employees enrolled in the family option suffered greater expense as a result of that change.

*Id.* at 277–78.[3]

In light of the foregoing facts, the Authority found that the FDIC had violated its duty to bargain under the FSLMRS when it unilaterally changed conditions of employment by requiring employees with family-plan coverage to pay more for their insurance and by changing the timing of the open season. The FLRA imposed a *status quo ante* remedy on the FDIC, requiring it to reinstate its 1987 practices, make whole any affected employees, and

begin negotiations with the NTEU concerning the health plan. *Id.* at 279. The FDIC now challenges this order.

## II. ANALYSIS

We will set aside a decision of the FLRA only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), 7123(c) (1988); *Patent Office Professional Ass'n v. FLRA*, 872 F.2d 451, 452 (D.C.Cir.1989). We accord considerable deference to the Authority when reviewing an unfair labor practice determination, recognizing that such determinations are " 'best left to the expert judgment of the FLRA.' " *United States Info. Agency v. FLRA*, 960 F.2d 165, 169 (D.C.Cir.1992) (quoting *United States Info. Agency v. FLRA*, 895 F.2d 1449, 1455 (D.C.Cir.1990)). Still, this deference does not relieve the FLRA of its obligation to provide a rational explanation for its decision. *Id.* Thus, in a questionable case, this court will uphold an unfair labor practice determination only if it can " 'discern a reasoned path from the facts and considerations before the [FLRA] to the decision it reached.' " *Id.* (quoting *Neighborhood TV Co. v. FCC*, 742 F.2d 629, 639 (D.C.Cir.1984)).

■ Absent this deferential standard of review, we might find it difficult if not impossible to sustain the Authority on a record at least as susceptible to the FDIC's interpretation as it is of the Authority's. Indeed, given the lack of clarity in the Authority's opinion, it is only this deference that prevents remand. Nevertheless, we can discern the path of the FLRA's reasoning sufficiently to uphold its decision and to avoid making the utterly vain gesture of remanding the case.

---

**3.** With respect to the new policy covering the "open season," the Authority held that,

> applying the standard in *Department of Health and Human Services, Social Security Administration*, 24 FLRA 403, 407 (1986), we find that the Agency's change in the open season period for its own health insurance plan also constituted a change in a condition of employment and that the effect of the

change on conditions of employment of bargaining unit employees was more than *de minimis*. The change affected employees' ability to enroll in, change status in, or terminate enrollment in the Agency's own health insurance plan. Consequently, we reject the Agency's claim that it had no duty to bargain in the circumstances of this case.

41 F.L.R.A. at 278.

As noted in the Background section of this opinion, the FLRA found that

the Agency's absorption of the entire increase in the health insurance premium for employees in the self-only option, but only partial absorption of the increase in the premium for employees enrolled in the family option, constituted a change in the conditions of employment for employees enrolled in the family option plan. Notwithstanding the fact that the Agency's percentage contribution toward the total insurance premium remained the same for both the self-only and family options, the employees enrolled in the family option suffered greater expense as a result of that change.

41 F.L.R.A. at 277–78. Taken alone, the first sentence above can be read to suggest that the FLRA found that the FDIC's decision to absorb 100% of the premium cost for self-only subscribers, but only 84.04% for family-plan subscribers, resulted in changed conditions of employment. However, as the FLRA fully recognized, the FDIC's percentage contribution to charges for family-plan premiums did not change in 1987, so it would have been patently absurd for the FLRA to rest on this ground as a basis for judgment in this case. Were we left only with the aforecited first sentence, we might be obliged to remand this case to the Authority for a better explanation of its position.

If the decision is *read in its entirety,* however, the FLRA's judgment is rational. The issue in any unilateral change unfair labor practice case is whether the employer changed the status quo with respect to a mandatory subject of bargaining without first negotiating with the union. With this in mind, and considering the considerable deference we owe the Authority, we are able to accept the Authority's explanation that the first sentence in the foregoing quoted portion of the FLRA's decision should be viewed as the starting point of the Authority's analysis of whether the FDIC changed a condition of employment without bargaining. The *second sentence* in the quoted portion of the decision is explanatory of the first sentence. It makes defensible the FLRA's claim that it

considered the change in status quo as having resulted from the change in the premium charge for family-plan subscribers, not a change in the percentage of employer contribution. Furthermore, when the FLRA assigned the remedy in this case, it ordered the FDIC to reimburse any employees who paid increased premiums as a result of the 1987 increase in the family-plan rate. *Id.* at 279. This remedy shows that the FLRA based its finding that the FDIC changed the status quo on the higher premium charges, not on a change in the percentage of employer contribution. Thus, despite the inarguably confusing language in the Authority's decision, we think it reasonable to conclude that the FLRA based its finding of an unfair labor practice on the increase in premium charges to family-plan subscribers, not on the contribution ratio.

The FDIC's position that it incurred no duty to bargain in 1987, because it never changed the ratio of its contribution to employee's premium charges, is certainly defensible. Indeed, this argument might have had some real force if the FDIC had pointed to evidence to support a claim that the employer's contribution ratio was compelled by contract or consistent with some binding past practice between the parties. And, if the FLRA had accepted the argument, we probably would have been compelled to deny the union's petition for review. It is uncontroverted, however, that there is no such evidence in the record of this case of a controlling contract provision or binding past practice between the parties. Absent such evidence, the FLRA could find that the agency violated the Statute when it *unilaterally* changed negotiable conditions of employment.

The FDIC acknowledged that a change in employees' premium charges can be a change in a condition of employment, and the case law clearly supports this concession. Since the Supreme Court's decision in *Fort Stewart,* the FLRA has consistently found that matters relating to health insurance premium charges are conditions of employment and are within the employer's duty to bargain, if the benefits are not

provided for by statute but are left to the discretion of the agency. *See, e.g., National Ass'n of Gov't Employees and Dep't of the Air Force,* 40 F.L.R.A. 118, 128–29 (1991) (holding that union proposal regarding employer contribution to health insurance premium concerned negotiable condition of employment); *National Ass'n of Gov't Employees and United States Dep't of the Army,* 38 F.L.R.A. 1223, 1227–28 (1990) (same); *American Fed'n of Gov't Employees and United States Dep't of Defense,* 38 F.L.R.A. 282, 288–89 (1990) (same); *American Fed'n of Gov't Employees and United States Dep't of the Air Force,* 36 F.L.R.A. 894, 899–901 (1990) (holding that two union proposals regarding allocation of a 19% increase in the cost of health insurance premiums concerned negotiable condition of employment); *see also NTEU, Chapter 207,* 28 F.L.R.A. at 740 (holding that union proposal that all benefit systems would be negotiable concerned a condition of employment because benefits were not provided for by statute and were provided at the FDIC's discretion). The FLRA, relying on the *stipulated fact* that the FDIC changed the premium charges and the time for open season, found that the FDIC changed conditions of employment and thereby breached its duty to bargain. There is no basis for this court not to defer to the FLRA's judgment on this point.

There is some superfluous discussion in the FLRA decision regarding whether the change in the timing of the open season was *de minimis.* As all parties concede, however, the *de minimis* doctrine is irrelevant in a situation as here, where the FLRA has already concluded that the decision to make a disputed unilateral change is itself negotiable. *United States Dep't of Labor and American Fed'n of Gov't Employees,* 44 F.L.R.A. 988, 994 (1992) (where there is an obligation to bargain over the substance of a change, the effect of the change on working conditions is not relevant); *United States Army Reserve Components Personnel & Admin. Ctr. and American Fed'n of Gov't Employees,* 19 F.L.R.A. 290, 292–93 (1985) (same). We have no idea why the FLRA suggested a possible application of a *de minimis* rule, when such a discussion could only lend confusion to what should have been a straight-forward decision. In any event, in the context of this case, we find the surplus discussion to be both irrelevant and harmless.

[2] Finally, we find that the FLRA did not abuse its discretion in electing a *status quo ante* remedy. This court accords the utmost deference to the FLRA's determination of an appropriate remedy. In *NTEU v. FLRA,* 910 F.2d 964 (D.C.Cir.1990) (en banc), we noted that the language of the FSLMRS exudes a broad congressional delegation of discretion to the FLRA to fashion appropriate remedies for unfair labor practices. *Id.* at 967. In this case the FLRA ordered the FDIC "to rescind the unlawful changes, reinstitute the previous practices, and make whole affected employees, including reimbursing employees who paid the increased family option health insurance plan premium." 41 F.L.R.A. at 279. This remedy was perfectly appropriate in a case of this sort, because, as we have previously noted, when an agency makes unilateral changes and refuses to bargain over them, the typical remedy is for the FLRA to order a "make whole" or *status quo ante* remedy. *American Fed'n of Gov't Employees v. FLRA,* 785 F.2d 333, 336–37 (D.C.Cir.1986) (per curiam), *cited with approval in NTEU v. FLRA,* 910 F.2d at 969. The purpose of such a remedy is to ensure that agencies will have the incentive to bargain with their unions. *See United States Dep't of the Treasury and NTEU,* 38 F.L.R.A. 838, 844 (1990).

The FDIC argues, however, that special circumstances counsel against such a remedy because it was adhering to a "government-wide policy" that health benefits were non-negotiable when it refused to bargain with the union concerning the 1987 changes to the health plan. This argument fails because the FLRA had directly ruled on the negotiability issue before the FDIC refused to negotiate with the union. *See NTEU, Chapter 207,* note 2 *supra.* Were we to sanction the FDIC's behavior, we would provide agencies with the incentive in the future to ignore the Authority's deci-

sions and orders. Such a result could "render meaningless" the FDIC's obligation to negotiate with the union. *See United States Dep't of the Treasury*, 38 F.L.R.A. at 844. It also would contravene the intent of the FSLMRS, which created the FLRA to "provide leadership in establishing policies and guidance relating to matters under this [Statute]." 5 U.S.C. § 7105(a)(1) (1988). Accordingly, we enforce the Authority's order because we find no special circumstances that counsel against a *status quo ante* remedy.

### III.  CONCLUSION

For all of the foregoing reasons, we deny the petition for review.

*So ordered.*