# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 18, 2014        Decided March 21, 2014

No. 12-1234

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of a Final Decision
of the Federal Labor Relations Authority

———

*Julie M. Wilson* argued the cause for petitioner. With her on the briefs were *Gregory O'Duden* and *Jacob Heyman-Kantor*. *Paras N. Shah* entered an appearance.

*Zachary R. Henige*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. On the brief were *Rosa M. Koppel*, Solicitor, and *David M. Shewchuk*, Deputy Solicitor.

Before: HENDERSON, ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The National Treasury Employees Union petitions for review of the decision of the Federal Labor Relations Authority that the Internal Revenue Service ("the IRS") did not commit an unfair labor practice under 5 U.S.C. § 7116 when it failed to provide the Union notice or an opportunity to bargain over an increase in the workloads of IRS Case Advocates. Because Authority precedent established that this bargaining obligation arises only when an agency initiates a change in its policies, practices, or procedures, and the Authority reasonably relied on that precedent, we deny the petition for review.

## I.

The Federal Service Labor-Management Relations Statute ("the Statute") requires agencies to bargain in good faith with their employees' recognized representative regarding "conditions of employment," 5 U.S.C. §§ 7102(2), 7103(a)(12), 7114(a)(4), (b), which include "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions," *id*. § 7103(a)(14). Although an agency is not required to bargain over its management rights, including the right to control its internal organization, the number of employees, and work assignments, it must negotiate about the impact and implementation of its exercise of those rights. *Id.* § 7106; *see NTEU v. FLRA*, 414 F.3d 50, 52–53 (D.C. Cir. 2005). Under 5 U.S.C. § 7116(a)(1) and (5), it is an unfair labor practice for an agency "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter" or "to refuse to consult or negotiate in good faith with a labor organization as required by this chapter." As interpreted by the Authority, the requirement of good faith bargaining means that

> prior to implementing a change in conditions of employment, an agency is required to provide the

exclusive representative with notice of the change and an opportunity to bargain over those aspects of the change that are within the duty to bargain, if the change will have more than a *de minimis* effect on conditions of employment.

*Dep't of the Air Force, Air Force Materiel Command, Space & Missile Sys. Ctr., Detachment 12, Kirtland Air Force Base, N.M.*, 64 F.L.R.A. 166, 173, 175 (2009); *see id.* at 176. Failure to do so constitutes a violation of 5 U.S.C. § 7116(a)(1) and (5). *Id.* at 173, 175; *see also Internal Revenue Serv., Washington, D.C.*, 4 F.L.R.A. 488, 488, 498–99 (1980).

On June 25, 2008, the Union, as exclusive bargaining representative, filed a national grievance on the ground that the IRS had "measurably increased the caseloads of Case Advocates within the Taxpayer Advoca[te] Service (TAS) without giving notice to [the Union] and providing an opportunity to bargain," and violated the parties' collective bargaining agreement (the "National Agreement") and 5 U.S.C. § 7116(a)(1) and (5). *See* Arb. Dec. at 3–4. An arbitrator found that the IRS violated Article 47 of the National Agreement and 5 U.S.C. § 7116(a)(1) and (5) by changing employees' conditions of employment without fulfilling its notice-and-bargaining obligations. Concluding that "[t]he IRS cannot control how many taxpayers use this service established by Congress and cannot choose to ignore taxpayers' inquiries and concerns," the Arbitrator found that "[w]orkload is not determined solely by the number of cases coming into TAS," and that the IRS "has control over other factors that affect workload," including case processing procedures, deadlines for completing individual actions, and the number of staff available. Arb. Dec. at 36. Because the "[s]ubstantial increases in the number of cases . . . are not sufficiently mitigated by other factors," the Arbitrator concluded that the IRS was responsible for the change in conditions of employment, triggering its

notice-and-bargaining obligations. *Id.* at 39–40. The Arbitrator awarded various remedies, including ordering the IRS to bargain and to post a notice that it had committed an unfair labor practice and violated the National Agreement, but denied the Union's requests for a *status quo ante* remedy and attorney's fees. Both the Union and the IRS filed exceptions.

The Authority reversed in part, affirmed in part, and remanded in part. First, it set aside the unfair labor practice violation under § 7116(a)(1) and (5), explaining that a finding that an agency has failed to provide a union with notice and an opportunity to bargain over changes to conditions of employment requires a "threshold determination that the agency made a change in a policy, practice, or procedure affecting unit employees' conditions of employment." *NTEU*, 66 F.L.R.A. 577, 579 (2012). The Arbitrator found only that there had been an increase in the number of incoming cases, not that the IRS made any "unilateral change" that violated its notice-and-bargaining obligations under the Statute. *Id.* at 580. Second, it left standing, in the absence of an exception, the Arbitrator's finding that the IRS had violated the National Agreement and therefore set aside only the posting requirement regarding the unfair labor practice. *See id.* at 581. Third, it rejected the Union's exception that the Arbitrator's denial of a *status quo ante* remedy was contrary to law but agreed with the Union on attorney's fees and remanded that portion of the award to the Arbitrator for additional factual findings, in the absence of agreement by the parties. *See id.* at 582.

The Union petitions for review of the Authority's determination that the IRS did not commit an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) and (5). We first address our jurisdiction.

5

**II.**

The court has jurisdiction to review a final order of the Authority when an unfair labor practice under 5 U.S.C. § 7116[1] is "either an explicit ground for, or [] necessarily implicated by, the Authority's decision." *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 67–68 (D.C. Cir. 1987) (adopting analysis in *United States Marshals Service v. FLRA*, 708 F.2d 1417, 1420 (9th Cir. 1983)); *see* 5 U.S.C. § 7123(a)(1). Here, the Authority's reversal of the Arbitrator's unfair labor practice finding clearly involves an unfair labor practice. Further, the Statute, 5 U.S.C. § 7123(c), contemplates review of a part of an Authority order by referencing 5 U.S.C. § 706, which refers to review of an "agency action" defined to include "the whole or a part of an agency . . . order." *Id.* § 551(13); *see id.* § 701(b)(2). An "order" is "the whole or a part of a final disposition . . . of an agency." *Id.* § 551(6). The Union's petition for review of only part of the Authority's Decision therefore does not deprive the court of jurisdiction, provided that Decision is "final" under § 7123(a).

Although a remand can defeat the finality of an order, *see Meredith v. Fed. Mine Safety & Health Review Comm'n*, 177 F.3d 1042, 1047 (D.C. Cir. 1999), for purposes of judicial review a final agency action "need not be the last administrative action contemplated by the statutory scheme." *Role Models Am., Inc. v. White*, 317 F.3d 327, 331 (D.C. Cir. 2003) (internal quotation marks and brackets omitted). Rather it "must mark the 'consummation' of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature . . .

---

[1] Although the Statute refers to "an unfair labor practice under section 7118," the correct reference is to § 7116. *See Am. Fed'n of Gov't Emps., Local 2510 v. FLRA*, 453 F.3d 500, 502 n.* (D.C. Cir. 2006).

[and] the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citation omitted); *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005); *see also John Doe, Inc. v. Drug Enforcement Admin.*, 484 F.3d 561, 566 & n.4 (D.C. Cir. 2007). In adopting "a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final" under 28 U.S.C. § 1291, the Supreme Court in *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988), explained that resolution of an attorney's fees claim "will not alter the order or moot or revise decisions embodied in the order," *id.* at 199, and generally "is not part of the merits of the action to which the fees pertain," *id.* at 200. The Court recently reaffirmed this rule in *Ray Haluch Gravel Co. v. Central Pension Fund of International Union of Operating Engineers & Participating Employers*, 134 S. Ct. 773 (2014).

Given the collateral nature of the determination of the Union's attorney's fee request, we "discern no reason that the Supreme Court's holding would not apply to an appeal from the decision of an administrative agency." *Fluor Constructors, Inc. v. Reich*, 111 F.3d 94, 95 (11th Cir. 1997); *see Wagner v. Shinseki*, 733 F.3d 1343, 1349 (Fed. Cir. 2013). The finality requirement is applied "in a 'flexible' and 'pragmatic' way," *John Doe, Inc.*, 484 F.3d at 566 (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967))), to ensure that courts "neither improperly intrude into the agency's decisionmaking process nor squander judicial resources through piecemeal review," *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 358 F.3d 31, 34 (D.C. Cir. 2004) (quoting *Ciba-Geigy Corp.*, 801 F.2d at 436) (internal quotation marks and brackets omitted). Neither concern is implicated here. The Authority has made a final determination that the Arbitrator erred in finding the IRS

committed an unfair labor practice under 5 U.S.C. § 7116 (a)(1) and (5). This determination satisfies each *Bennett* factor because the Authority's decisionmaking process with respect to the statutory violation is complete and it has made a final determination of the parties' rights and obligations. *See John Doe, Inc.*, 484 F.3d at 566; *see also Bennett*, 520 U.S. at 177–78. The Authority determined that the unchallenged finding that the IRS had violated the National Agreement could support the Union's request for attorney's fees. *See NTEU*, 66 F.L.R.A. at 581. That the Authority remanded the attorney's fees issue therefore does not suggest that its decisionmaking process with respect to the independent unfair labor practice question is incomplete. Furthermore, there is little realistic possibility of piecemeal review because it is unlikely this court would have jurisdiction to review the attorney's fee determination. Orders involving only an arbitrator's award of attorney's fees generally have no bearing upon the law of unfair labor practices and are therefore not judicially reviewable. *See Am. Fed'n of Gov't Emps., Local 2510*, 453 F.3d at 504–05; 5 U.S.C. § 7123(a)(1).

For these reasons, we hold that the court has jurisdiction to consider the Union's petition and turn to the merits.

## III.

The court will set aside an order of the Authority only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), 7123(c). Further, deference is due to the Authority's interpretation of the Statute under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See NASA v. FLRA*, 527 U.S. 229, 234 (1999); *Dep't of Justice v. FLRA*, 266 F.3d 1228, 1230 (D.C. Cir. 2001); 5 U.S.C. § 7105. The Authority must "provide a rational explanation for its decision" but in reviewing unfair labor practice determinations, the court

"recogniz[es] that such determinations are best left to the expert judgment of the [Authority]." *FDIC v. FLRA*, 977 F.2d 1493, 1496 (D.C. Cir. 1992) (internal quotation marks omitted).

Although the Statute imposes a duty to bargain over employees' conditions of employment, *see* 5 U.S.C. §§ 7102(2), 7103(a)(12), 7114(a)(4), (b)(2), it does not refer to an employer's obligation to provide advance notice to an employee representative of changes to employees' working conditions. Rather, the "notice-and-bargaining" obligations derive from the Authority's interpretation of the Statute's mandate in 5 U.S.C. § 7116(a)(1) and (5) that agencies must bargain in good faith over working conditions. *See, e.g.*, *Dep't of the Air Force, Air Force Materiel Command, Space & Missile Sys. Ctr., Detachment 12, Kirtland Air Force Base, N.M.*, 64 F.L.R.A. 166, 173, 175 (2009); *Dep't of Veterans Affairs, Med. Ctr., Sheridan, Wyo.*, 59 F.L.R.A. 93, 94–95 (2003); *Dep't of Labor, OSHA, Region 1, Bos., Mass.*, 58 F.L.R.A. 213, 215–16 (2002); *Internal Revenue Serv., Washington, D.C.*, 4 F.L.R.A. 488, 488, 498–99 (1980). Under that precedent, these obligations arise only if the agency has "made a change in a policy, practice, or procedure affecting unit employees' conditions of employment." *NTEU*, 66 F.L.R.A. at 579. More particularly, "where employees' 'volume' of work or 'number' of assignments increases, but those increases are not attributable to any change in the agency's policies, practices, or procedures affecting working conditions, . . . [the] increases '[s]tanding alone' do not trigger notice-and-bargaining obligations under § 7116(a)(5)." *Id.* at 579–80 (quoting *Dep't of Veterans Affairs*, 59 F.L.R.A. at 94–95).

The Union does not suggest that the Authority's interpretation requiring a unilateral change by an agency to trigger notice-and-midterm bargaining is contrary to the Statute, and we agree that the Authority's interpretation "is certainly consistent with the [Statute] and, to the extent the statute and

congressional intent are unclear, we may rely on the Authority's reasonable judgment." *NASA*, 527 U.S. at 234. Instead, the Union contends, as it had argued to the Authority in opposing the IRS's exceptions, that the Arbitrator, in emphasizing factors within the IRS's control, applied the correct legal standard for changes to working conditions in finding an unfair labor practice by the IRS. Responding, the Authority reasonably rejected, in light of its precedent, both the Arbitrator's approach and the Union's proposal for a "'bright-line rule' that significantly increased workloads trigger an agency's notice-and-bargaining obligations under § 7116 regardless of whether the increase is 'precipitated by the agency.'" *NTEU*, 66 F.L.R.A. at 580 (quoting Union's Opposition to the Agency's Exceptions at 30). The Authority explained that "[t]he Union has not explained how an agency could *unilaterally change* conditions of employment — and thereby violate § 7116 — if it has not *made any change* to a policy, practice, or procedure affecting conditions of employment." *Id.*

The Union no longer presses its bright-line rule, which the Authority viewed as seeking a change in its precedent. Instead the Union contends first that the Authority impermissibly ignored the Arbitrator's factual findings that there was a change in conditions of employment. The Union relies on the principle that in reviewing questions of law, the Authority is to defer to the Arbitrator's findings of fact. *See Dep't of Commerce, Patent & Trademark Office*, 52 F.L.R.A. 358, 367 (1996); *accord Nat'l Fed'n of Fed. Emps., Local 1437*, 53 F.L.R.A. 1703, 1710 & n.6 (1998). It points to the Arbitrator's findings that the IRS "has control" over factors that affect Case Advocates' workloads, including staffing and case processing procedures. Arb. Dec. at 36. In the Union's view, even under the Authority's narrow "policy, practice, and procedure" standard the Authority's application of it was erroneous because the IRS was an actor in creating a different and difficult work environment. But the Authority's determination that the IRS

did not make any unilateral change was consistent with the Arbitrator's factual finding that the IRS "divide[d] up an ever-growing pool of cases among virtually the same number of existing Case Advocates without making other reasonable adjustments." Arb. Dec. at 40. Under Authority precedent, this was the critical finding: The IRS responded to outside factors, but initiated no change of its own to its policies, practices, or procedures.

Similarly, the Union's second contention, that the Authority's narrow standard is inconsistent with the statutory definition of "conditions of employment," which includes "personnel policies, practices, and matters . . . affecting working conditions," 5 U.S.C. § 7103(a)(14), is unconvincing. Although the Case Advocates may have experienced a change in "practices" and "matters" affecting their working conditions between 2006 and 2009, the Arbitrator did not find that these changes had been initiated by the IRS. The reasonableness of the Authority's judgment in adopting a clear threshold principle for triggering an agency's "notice-and-bargaining" obligations is highlighted by the Arbitrator's implicit recognition that any other rule would leave an agency guessing about when its obligations are triggered by the gradual influence of external factors; in rejecting the Union's request for a *status quo ante* remedy, the Arbitrator observed that "it would be difficult if not impossible to determine exactly to what point in time the [IRS] must return." Arb. Dec. at 46. The Authority's determination, relying on its precedent, that the Arbitrator erred in finding an unfair labor practice was adequately explained and is neither arbitrary nor capricious. *See* 5 U.S.C. §§ 706(2)(A), 7123(c). And to the Union's assertion that under the Authority's narrow standard unions would be denied the ability to negotiate over changes in working conditions solely because the changes were not initiated by an agency, the Authority responds that its interpretation does not relieve an agency of its duty to respond to union-initiated proposals within the duty to bargain; it only

limits an agency's obligation to provide advance notice and an opportunity to bargain to situations where the agency itself has initiated a unilateral change.  *See* Resp't's Br. at 26; *see also Library of Congress v. FLRA*, 699 F.2d 1280, 1289–90 (D.C. Cir. 1983).

Accordingly, we deny the petition for review.