# United States Court of Appeals for the Federal Circuit

UNITED STATES CAPITOL POLICE,
*Respondent*

v.

OFFICE OF COMPLIANCE,
*Applicant*

FRATERNAL ORDER OF POLICE, DISTRICT OF COLUMBIA LODGE NO. 1, U.S. CAPITOL POLICE LABOR COMMITTEE,
*Intervenor*

2018-1502

Petition for enforcement of decisions of the Board of Directors of the Office of Compliance in Nos. 16-LM-03 (NG), 16-LM-04 (NG), 16-LM-05 (NG), 16-LM-06 (NG).

Decided: November 6, 2018

FREDERICK M. HERRERA, Office of Employment Counsel, United States Capitol Police, Washington, DC, argued for respondent.

JOHN D. UELMEN, Office of the General Counsel, United States Office of Compliance, Washington, DC, argued for applicant. Also represented by JULIA AKINS

CLARK.

MEGAN KATHLEEN MECHAK, Woodley & McGillivary LLP, Washington, DC, argued for intervenor.

_____

Before DYK, LINN, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

The United States Capitol Police (Police) and the Fraternal Order of Police, District of Columbia Lodge No. 1, U.S. Capitol Police Labor Committee (Union) operate under a collective bargaining agreement that, although set to expire in June 2013, remains in force until the parties reach a new agreement. Pursuant to that agreement, the Police notified the Union of a variety of changes it planned to make—at least in language or format—to the Police's personnel policies. The Union responded by submitting its own proposals for personnel-policy changes. The Police declined to negotiate over some of the Union's proposals, of which twelve are at issue in the present case.

The Union filed petitions with the Office of Compliance Board of Directors (Compliance Board), seeking review of the negotiability of the proposals over which the Police had declined to negotiate. In March 2017, the Compliance Board ruled for the Police as to some of the proposals but for the Union as to others, including the twelve at issue here; and as to the latter, the Compliance Board ordered the Police to bargain with the Union. The Police filed petitions with this court to review the Compliance Board's negotiability decisions, and the Union intervened in support of the Office of Compliance. In the meantime, the Police refused to bargain with the Union, so the Office of Compliance petitioned this court to enforce the Compliance Board's decisions. This case is the enforcement case involving those twelve proposals.

In related cases decided today, we hold that we lack jurisdiction over the Police's petitions for direct review of the Compliance Board's negotiability decisions but that we have jurisdiction over the Office of Compliance's petitions to enforce such decisions. *See U.S. Capitol Police v. Office of Compliance*, Nos. 2017-2061, 2018-1504, slip op. at 8–12 (Fed. Cir. Nov. 6, 2018). We also hold that, in ruling on the Office of Compliance's petitions for enforcement, we review the underlying negotiability decisions under the default standard of review stated in the Administrative Procedure Act (APA), 5 U.S.C. § 706. *U.S. Capitol Police*, Nos. 2017-2061, 2018-1504, slip op. at 12–18. We further hold that whether the Compliance Board refers a negotiability petition to a hearing officer is a matter for the sound exercise of discretion by the Compliance Board, not a matter of statutory compulsion, and that the opportunity for such a referral may be lost if not timely requested. *Id.* at 18–21.

As a result of those rulings, we today separately dismiss the Police's petitions for direct review of the Compliance Board's negotiability decisions regarding the twelve proposals at issue here. *See U.S. Capitol Police v. Office of Compliance*, Nos. 2017-2060, -2062, -2063, -2064 (Fed. Cir. Nov. 6, 2018). We have jurisdiction over the present enforcement action by the Office of Compliance under 2 U.S.C. § 1407(a)(2). In this action, we review the underlying negotiability determinations under the APA standard.

For the reasons set forth below, we grant the Office of Compliance's petition for enforcement of the Compliance Board's order with respect to Proposals F, K, P, R, and S. We deny the petition for enforcement with respect to Proposals D, E, G, H, L, and 8. We set aside the Compliance Board's order with respect to Proposal I and remand for a determination of whether that proposal involves a change in conditions of employment.

I

In the Congressional Accountability Act (CAA) of 1995, Pub. L. No. 104-1, 109 Stat. 3 (codified as amended at 2 U.S.C. §§ 1301–1438), Congress provided certain legislative branch employees with some of the same collective bargaining rights as those enjoyed under other statutes by certain executive branch employees. Executive branch employees are provided such rights by the Federal Service Labor-Management Relations Statute (FSLMRS), 5 U.S.C. §§ 7101–7135, which is generally implemented by the Federal Labor Relations Authority (FLRA), whose determinations are reviewable by the D.C. Circuit and regional circuits. The CAA, rather than independently setting forth its own comparable set of provisions for legislative branch employees, achieves its aim largely by expressly incorporating specified provisions of the FSLMRS. *See* 2 U.S.C. § 1302(a)(7); *id.* § 1351(a)(1) (adopting 5 U.S.C. §§ 7102, 7106, 7111–7117, 7119–7122, 7131). Like the parties in this case and the Office of Compliance, we look to the legal standards articulated by other courts and the FLRA under the FSLMRS provisions made applicable to issues in this case by the CAA.

Those provisions begin with 5 U.S.C. § 7102(2), which establishes that certain employees have the right to "engage in collective bargaining with respect to conditions of employment through representatives." Section 7117 adds that an agency has a duty to bargain with its employees' union in good faith under various circumstances. And those FSLMRS provisions, along with others, establish limits on the agency's duty to bargain.

An agency is not under an obligation to bargain with a union over an agency practice that is within the scope of the parties' existing collective bargaining agreement. *U.S. Dep't of Homeland Security, Customs & Border Prot. v. FLRA*, 647 F.3d 359, 362 (D.C. Cir. 2011) ("[D]uring the

term of a collective bargaining agreement, 'an agency may act unilaterally' with regard to any matter 'contained in or covered by' the agreement." (quoting *EEOC, Wash., D.C.*, 52 F.L.R.A. 459, 460 (1996)). An agency need not bargain over a practice that is not in fact a "change in a policy, practice, or procedure affecting unit employees' conditions of employment." *Nat'l Treasury Emps. Union v. FLRA*, 745 F.3d 1219, 1222 (D.C. Cir. 2014). Additionally, "the FLRA has interpreted the statute to include an unwritten *de minimis* exception," and the D.C. Circuit has "deferred to its interpretation." *American Fed'n of Gov't Emps. v. FLRA*, 446 F.3d 162, 165 (D.C. Cir. 2006); *see also U.S. Dep't of the Air Force, Air Force Materiel Command, Space & Missile Systems Ctr., Detachment 12, Kirtland Air Force Base, N.M.*, 64 F.L.R.A. 166, 173 (2009) (explaining this doctrine). And even when an agency practice meets the foregoing change standard, the agency need not bargain over a union proposal that is not "reasonably related" to the changes. *Patent Office Prof'l Ass'n* (*POPA*), 66 F.L.R.A. 247, 253 (2011) ("An agency . . . is not required to bargain over proposals that go beyond the scope of a proposed change . . . .").

A union's proposals, to be within the duty to bargain, also may not violate certain enumerated statutory rights of the agency. *See* 5 U.S.C. § 7106 (titled "Management rights"). Of relevance here, the FSLMRS states that "nothing in this chapter shall affect the authority of any management official of any agency . . . in accordance with applicable laws . . . to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees" or "to assign work." 5 U.S.C. § 7106(a)(2)(A)–(B). But a union's proposal does not violate those rights "simply because it requires an agency to take some action." *Nat'l Fed'n of Fed. Emps., Local 2099*, 35 F.L.R.A. 362, 368 (1990). And the management

rights are expressly subject to three limitations. 5 U.S.C. § 7106(b).

Two are important here. First, nothing in § 7106 "shall preclude any agency and any labor organization from negotiating . . . procedures which management officials of the agency will observe in exercising" one of the statutory rights. 5 U.S.C. § 7106(b)(2). "For purposes of determining what constitutes a 'procedure' within the meaning of this provision . . . it is pertinent to ask . . . whether 'implementation would directly interfere with the agency's basic right . . . [reserved] under section 7106(a).'" *American Fed'n of Gov't Emps., AFL-CIO, Local 2782 v. FLRA*, 702 F.2d 1183, 1186 (D.C. Cir. 1983) (emphasis and internal quotation marks omitted) (quoting *Dep't of Def., Army-Air Force Exch. Serv. v. FLRA*, 659 F.2d 1140, 1159 (D.C. Cir. 1981)).

Second, an agency's § 7106 management rights do not preclude requiring negotiation over "appropriate arrangements for employees adversely affected by the exercise" of one of management's statutory rights. 5 U.S.C. § 7106(b)(3). To determine whether this provision is implicated, the FLRA applies a two-step test. Initially, the FLRA "examine[s] the record in each case to ascertain as a threshold question whether a proposal is in fact intended to be an arrangement for employees adversely affected by management's exercise of its rights." *Nat'l Ass'n of Gov't Emps., Local R14-87* (*NAGE*), 21 F.L.R.A. 24, 31 (1986), *overruling on other grounds recognized by U.S. Dep't of the Treasury, IRS, Office of Chief Counsel, Wash., D.C. v. FLRA*, 739 F.3d 13 (D.C. Cir. 2014). Then, the FLRA "determine[s] whether the arrangement is appropriate or whether it is inappropriate because it excessively interferes" with one of management's statutory rights, according to "the totality of facts and circumstances in each case." *Id.* at 31, 33.

## II

We now turn to the specifics of the twelve disputed union proposals in this case. The twelve proposals are associated with four directives that the Police provided to the Union pursuant to the parties' collective bargaining agreement. The directives address Emergency Suspensions (Proposal 8), Time and Attendance (Proposals K, L, P, R, and S), Outside Employment (Proposals D, E, F, G, and H), and Absence and Leave (Proposal I). We consider the proposals for each directive in turn.

We review the Compliance Board's rulings on the proposals to ensure that they are neither "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" nor "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *see also U.S. Capitol Police*, Nos. 2017-2061, 2018-1504, slip op. at 12–18. Substantial evidence for factual findings means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)).[1]

## A

In the Emergency Suspensions directive, the Police included new policies for "Suspension without Pay." In response, the Union asserted that the new policies were "unprecedented," J.A. 646, and it advanced its own proposal, referred to before this court as Proposal 8: "The [Police] will bear the burden in demonstrating that the

---

[1] The Police has not shown error with respect to the absence of a referral to a hearing officer. The Police did not request such a referral before the Compliance Board, let alone support such a request with a showing of legally material factual issues that warranted such a referral for a hearing.

unpaid suspension will promote the efficiency of service." J.A. 647. The Compliance Board concluded that Proposal 8 is negotiable.

That conclusion is contrary to law and must be reversed, even if we assume (without deciding) that "the proposal expressly refers to the [Police]'s *continuing* suspension of an employee without pay" and "can *only* be interpreted to operate *after* the [Police] has already suspended an employee without pay." J.A. 525. The proposal interferes with the Police's right to discipline under 5 U.S.C. § 7106(a)(2)(A). By placing a burden on the Police to justify its decisions to suspend (or continue to suspend) employees, Proposal 8 impermissibly narrows the scope of the agency's disciplinary authority. *See American Fed'n of Gov't Emps., Local 1822*, 9 F.L.R.A. 709, 711 (1982) (holding that "modifying the substantive criteria for taking disciplinary action" violates section 7106(a)(2)(A)). Imposing a continuing burden of persuasion is properly understood as a substantive, not procedural, matter. *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014); *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 271 (1994). And the interference with management discipline authority exists even if Proposal 8 applies only to a continuation, not the initiation, of a suspension: limiting continuation directly affects management's ability to effectuate a suspension for the period management determines is appropriate.

With respect to Proposal 8, the Office of Compliance's petition to enforce the Compliance Board's decision is denied.

B

The Time and Attendance directive, provided to the Union in 2016, was a successor to interim guidance on time and attendance adopted by the Police in 2011. J.A. 383–87. The 2016 directive includes updates to policies

for using the Police's electronic time certification system, WorkBrain. J.A. 390–97. The new directive differs from the earlier interim guidance in several ways. For example, the directive contains nine definitions, whereas the interim guidance contains only three, and the directive includes substantive content that does not appear in the interim guidance, such as a subsection titled "Accounting for Time Worked." The Union submitted a variety of proposals in response to the directive. We first address Proposals K, P, R, and S, and then we address Proposal L.

1

In Proposal K, the Union proposed to add the following language to a directive paragraph titled "Virtual Time Clock":

> d. Employees who are not able to access a computer or other mobile device while away from a duty location should notify their first-line supervisor that they will be unable to enter their daily clock-in and clock-out times until returning to their duty location. The employee and supervisor can then either (1) agree that the supervisor will enter the employee's clock-in and clock-out times while the employee is away from the workplace by the employee notifying the supervisor daily by telephone or (2) agree that the employee will be permitted to enter the clock-in and clock-out times for the time spent away from the duty station within five (5) workdays of returning to the duty station. Employees are not required to use their personal computers to enter their daily clock-in and clock-out times.

J.A. 400. The Compliance Board concluded that this proposal is within the Police's duty to bargain.

The Police opposed bargaining over Proposal K principally on the asserted ground that the directive provi-

sions it responds to do not change conditions of employment, at least not in a way that is more than *de minimis*. But the Compliance Board appropriately considered and reasonably rejected that contention. The *de minimis* threshold for triggering the bargaining duty is not a demanding one. *See, e.g.*, *U.S. Dep't of the Treasury, IRS*, 56 F.L.R.A. 906, 913 (2000) (finding that moving employees from the ninth floor to the third floor was more than a *de minimis* change in working conditions). In the Police's submissions before the Compliance Board and this court, we see no basis for concluding that the Compliance Board acted contrary to any established legal standard or made an arbitrary or irrational judgment in determining that the *de minimis* threshold was met by the directive's various changes from a paper system to an electronic system, including the changes mentioned above.

The Police suggests that it need not bargain over Proposal K because the proposal is focused on the Police's relationship with employees outside the Union's designated bargaining unit, and it faults the Compliance Board for not making a finding about whether that relationship "vitally affects" employees within the bargaining unit. *See U.S. Dep't of the Navy, Naval Aviation Depot, Cherry Point, N.C. v. FLRA*, 952 F.2d 1434, 1440 (D.C. Cir. 1992) (addressing such a situation). But the proposal clearly covers employees within the bargaining unit, and while its language might reach more widely, the Compliance Board found that "[t]he Union has represented in this proceeding that it only seeks to negotiate on behalf of its bargaining unit." J.A. 265. The Compliance Board acted reasonably in taking the Union at its word and relying on the Union to agree in negotiations to limit Proposal K's "scope to unit employees," with any failure to do so open to later challenge. *Id.*

Lastly, in response to the Police's contention that Proposal K interferes with the management right "to assign work" off-site, 5 U.S.C. § 7106(a)(2)(B), the Com-

pliance Board concluded that Proposal K comes within the exclusion of "appropriate arrangements" for employees adversely affected by the work assignments, § 7106(b)(3). *See* J.A. 267–68. We see no reversible error in that conclusion. The Compliance Board applied the cost-benefit framework from *NAGE*, 21 F.L.R.A. at 31–35. It found that Proposal K's benefits to employees outweigh any limited interference with supervisors' decision-making because "[i]t would prevent employees working off-site who do not have access to computers, or do not want to use their personal computers, from contravening the requirements of the draft Directive." J.A. 268. The Compliance Board also found that "consultations between employees and supervisors are, or should be, routine activities in the workplace." *Id.* Ultimately, the Compliance Board determined that Proposal K is an appropriate arrangement that does not excessively interfere with the Police's statutory rights. We see no reason to disturb the Compliance Board's findings and determination.

With respect to Proposal K, the Office of Compliance's petition to enforce the Compliance Board's decision is granted.

2

In Proposal P, the Union proposed to add the following language to the end of a directive subsection that outlines responsibilities and procedures for employees:

> 5. The Department will provide sufficient time, on a daily basis, for employees to complete their time and attendance responsibilities on a daily basis. While the exact amount of time to complete these duties may vary depending on the circumstances, the Department recognizes that, generally, fifteen (15) minutes is a sufficient amount of time on a daily basis for an employee to complete his or her time and attendance responsibilities.

J.A. 401. The Compliance Board determined that the Police must bargain over this proposal.

When the Police argued to the Compliance Board that Proposal P interferes with its statutory management right "to assign work" to supervisors and timekeepers, 5 U.S.C. § 7106(a)(2)(B), the Compliance Board rejected the argument. It concluded that, "by its plain terms, Proposal P neither requires nor prevents the assignment of work to any employees" and, instead, "is a procedure management officials would observe, under 5 U.S.C. § 7106(b)(2), in exercising their authority to require employees to enter their time and attendance data." J.A. 270. The Police has not shown reversible error. Under the Time and Attendance directive, the Police would assign the work of electronic time entry to its employees. Proposal P would not interfere with that assignment; rather, it would ensure that employees have enough time to complete their assigned work and that they are compensated for that time. We have been pointed to no authority undermining the reasonableness of the Compliance Board's determination that the proposal comes within the § 7106(b)(2) "procedure" exception to management rights.

According to the Police, Proposal P is outside its duty to bargain for still other reasons—that the directive provisions it responds to would make no more-than-*de-minimis* changes in working conditions, and that the proposal attempts to negotiate for non-bargaining-unit employees. We reject those arguments, which have no more merit for Proposal P than for Proposal K.

With respect to Proposal P, the Office of Compliance's petition to enforce the Compliance Board's decision is granted.

### 3

In Proposal R, the Union proposed to add the following language to the directive's "Additional Information" section:

> 2. Employees may request extensions of any timelines under this Directive. The Department will grant such extensions unless doing so would cause an undue burden on the Department. All responses to extension requests must be provided by the Department to the employee in writing within 24 hours of the request. If the Department denies the extension request, it shall set out, with specificity, the reason(s) for the denial. Any request for an extension of time shall be deemed granted, if the Department fails to respond to it within 24 hours. Denials of extension requests shall be grievable pursuant to the applicable grievance procedure.

J.A. 401. The Compliance Board concluded, favorably to the Police, that the final sentence of Proposal R is covered by the parties' collective bargaining agreement and, therefore, is outside the Police's duty to bargain. But the Compliance Board determined that the rest of Proposal R (consisting of the first five sentences) is within the Police's duty to bargain.

The Police challenges the latter determination. But the first five sentences of Proposal R no more stop management from assigning work to employees than does Proposal P, and they are just as reasonably viewed as proposing "procedures." Similarly, the Compliance Board reasonably found that those sentences of Proposal R respond to more-than-*de-minimis* changes in working conditions, as we have concluded with respect to Proposal K. Likewise, as to the Police's challenge regarding the first five sentences of Proposal R as aimed at employees

outside the bargaining unit, we find no more merit than we find in the similar challenge to Proposal K.

With respect to Proposal R, the Office of Compliance's petition to enforce the Compliance Board's decision is granted.

4

In Proposal S, the Union proposed to add the following language to the directive's "Additional Information" section:

> 3. If, for any reason, an employee is physically or otherwise unable to use the computer programs required under this Directive to complete his or her time and attendance, the employee is encouraged to contact his or her first-line supervisor to discuss reasonable accommodations available to that employee. The Department will make every effort to ensure that employees who are physically or otherwise unable to use the computer programs are accommodated.

J.A. 401. The Compliance Board determined that the Police must bargain over this proposal.

The Police contends that Proposal S lies outside its duty to bargain for two reasons already discussed regarding Proposal K: that it does not respond to any more-than-*de-minimis* changes in working conditions, and that it is part of the Union's attempt to negotiate for non-bargaining-unit employees. These arguments have no more merit for Proposal S than for Proposal K.

With respect to Proposal S, the Office of Compliance's petition to enforce the Compliance Board's decision is granted.

**5**

In Proposal L, the Union proposed to add the following language to the end of the directive's subsection titled "Supervisor Verification/Certification":

e. Supervisors cannot refuse to verify or certify that an FLSA non-exempt employee performed work as long as the work was suffered or permitted by the employer. Supervisors cannot refuse to verify or certify that an FLSA non-exempt employee performed work on the basis that the work was not pre-approved by the Department.

J.A. 400. The Compliance Board determined that the Police must bargain over this proposal.

The Police contends that the proposal lacks a reasonable relation to the Police's changes stated in the Time and Attendance Directive, as required for negotiability. We agree with the Police that neither the Compliance Board in its decision nor the Office of Compliance or the Union in this court has identified how Proposal L reasonably relates to the Police's changes.

The relevant portion of the directive is a subsection titled "Supervisor Verification/Certification" in the "Attestation and Certification of T&A" section. Some language in that subsection did not appear in the earlier interim guidance. *Compare* J.A. 393–94, *with* J.A. 383–87. The subsection focuses on ensuring that time entered into the WorkBrain system is accurate. For example, the end of the relevant subsection reads as follows:

6. A supervisor's verification of employee T&A data certifies the following:

a. All related documentation or data elements, including approvals, accurately reflect work performed and are maintained in computer files.

b. Supporting documents or computerized files have been reviewed by the supervisor prior to certifying T&A data.

c. The reported T&A data for the employee accurately reflects the supporting documentation/computerized support files, including the use of proper overtime codes.

d. The employee will be informed of the supervisor's and other officials' changes to T&A.

J.A. 394.

The language of Proposal L would be a departure from, not a same-subject coherent continuation of, this list. Although the proposal is worded in terms of when a supervisor should "verify or certify work," the essence of the proposal is ensuring the Police's compliance with the Fair Labor Standards Act, which is quite different from the subject of the directive's provisions. An agency "is not required to bargain over [union] proposals that go beyond the scope of a [management-]proposed change." *POPA*, 66 F.L.R.A. at 253. Here, Proposal L is not reasonably related to, and so goes beyond the scope of, the relevant directive provisions. The Compliance Board set forth no basis for a contrary conclusion, and neither the Office of Compliance nor the Union has identified a record-supported potential basis for such a conclusion to justify a remand on the issue.

With respect to Proposal L, the Office of Compliance's petition to enforce the Compliance Board's decision is denied.

C

In June 2016, the Police provided the Union with a copy of an Outside Employment directive. J.A. 808–14. That directive addresses much of what appeared in a May 2012 standard operating procedure for outside employ-

ment. J.A. 839–43. Despite a high degree of similarity, there are some differences: the directive (1) includes four new definitions, (2) requires employees to obtain additional approvals from supervisors, and (3) revises appendices that list prohibited and permissible activities. Five Union proposals relating to this directive are in dispute before us. All five involve items in Appendix A, which lists fourteen prohibited activities for sworn employees. We first address Proposals D, E, G, and H, and then we address Proposal F.

1

The Union made Proposal D to respond to what it argued was a change in conditions of employment in the directive. Appendix A in the Police's standard operating procedure prohibited employees from engaging in outside work when "2. The employee's position as a police officer might influence that taking of action which that member might not otherwise take." J.A. 842. The directive version changes the language to the following: "2. When an employee's position as a police officer might influence taking action which that member might not otherwise take." J.A. 812. The Union, asserting that the language in the directive is vague, proposed that the Police provide one non-exclusive example for clarification. J.A. 818. The Compliance Board determined that Proposal D is subject to the duty to bargain.

We agree with the Police that Proposal D is outside its duty to bargain because the proposal does not relate to a change in conditions of employment. It is not enough to say, as the Compliance Board did, that the Police "did not merely present the Union with revisions to the existing [standard operating procedure], but with a new draft directive." J.A. 696. Use of a new format ("a new draft directive") does not imply substantive change, which is what matters. Here, the relevant directive change is no more than stylistic; it is not substantive in any respect.

Accordingly, there has not been a change in working conditions giving rise to a duty to bargain over Proposal D.

With respect to Proposal D, the Office of Compliance's petition to enforce the Compliance Board's decision is denied.[2]

2

The Union's Proposal E is subject to an almost identical analysis. Appendix A in the Police's standard operating procedure prohibited employees from working for "7. An enterprise which is under contract to furnish goods or services to the Department." J.A. 842. The new directive includes this prohibition verbatim. J.A. 812. In Proposal E, the Union proposed to make this prohibition conditional:

> 7. An enterprise which is under contract to furnish goods or services to the Department if the paid employment would raise questions of favoritism. Upon request, the Department shall provide a list of enterprises which are under contract to furnish goods or services to the Department.

J.A. A818 (emphasis omitted). The Compliance Board concluded that this proposal is within the Police's duty to bargain.

We agree with the Police that Proposal E is outside of its duty to bargain because the proposal does not relate to a change in conditions of employment. Proposal E responds to a provision of the directive that is no different at all, not even stylistically, from the language of its

---

[2] For this proposal, as for others discussed *infra,* we do not discuss certain challenges by the Police that are immaterial in light of our rejection of the Compliance Board's conclusion for the reasons we set forth.

predecessor in the standard operating procedure. There being no relevant change in the directive, the Police therefore had no duty to bargain over Proposal E.

With respect to Proposal E, the Office of Compliance's petition to enforce the Compliance Board's decision is denied.

3

The Union's Proposal G is subject to a closely related analysis. Appendix A in the Police's standard operating procedure prohibited "10. Employment requiring maintenance of a place of abode, temporarily or otherwise, at any facility (including a firehouse)." J.A. 842. The directive, besides a stylistic change, adds certain language: "10. Employment that requires maintaining a place of abode, temporarily or otherwise, at any facility (including a firehouse) *other than at the sworn employee's official residence, unless specifically authorized by the Chief of Police*." J.A. 812 (emphasis added). In Proposal G, the Union, without proposing specific language, asked the Police to clarify whether this restriction applies to volunteer firefighters. J.A. 819. The Compliance Board considered Proposal G together with Proposal D and ordered the Police to bargain over Proposal G for the same reasons.

We agree with the Police that Proposal G is outside its duty to bargain. The Compliance Board did not set forth, and the Office of Compliance and the Union have not established in this court, any basis for viewing the differences between the prohibition in the standard operating procedure and the prohibition in the directive as more than *de minimis*. The directive adds an exception to the prohibition for "the sworn employee's official residence." J.A. 812. But an exception for the employee's place of abode was surely implicit in the standard operating procedure. Making explicit what was implicit is not a more-than-*de-minimis* change. The directive also allows the Chief of Police to approve living arrangements that

would otherwise be prohibited. This change is also *de minimis*: nothing in the Compliance Board's decision, or submissions by the Office of Compliance or the Union, indicates that the Chief of Police could not authorize an employee to deviate from the standard operating procedure. In these circumstances, we agree with the Police that it is not obligated to bargain over Proposal G.

With respect to Proposal G, the Office of Compliance's petition to enforce the Compliance Board's decision is denied.

4

We reach the same conclusion regarding the Union's Proposal H. Appendix A in the Police's standard operating procedure prohibited "13. Employment or voluntary work while on sick or administrative leave, Continuation of Pay (COP), or on Restricted Duty for medical reasons unless specifically authorized by the Chief of Police." J.A. 842. The prohibition in the directive is nearly identical: "13. Employment or voluntary service while on sick or administrative leave, Continuation of Pay, or on Restricted Duty for medical reasons unless specifically authorized by the Chief of Police." J.A. 812. In Proposal H, the Union proposed to delete the words "or administrative." J.A. 819. The Compliance Board determined that the Police must bargain over this proposal.

We agree with the Police that Proposal H is outside its duty to bargain because the proposal does not relate to a change in conditions of employment. Proposal H responds to a directive provision that changes the earlier language of the standard operating procedure only by replacing "work" with "service" and removing the "COP" abbreviation for "Continuation of Pay." The Compliance Board did not set forth, and the Office of Compliance and the Union have not established in this court, any basis for concluding that those changes are at all substantive, let alone more than *de minimis*. Moreover, the only subject

of the Union's proposal is a phrase that has not changed ("or administrative"). Accordingly, the Police need not bargain over this proposal.

With respect to Proposal H, the Office of Compliance's petition to enforce the Compliance Board's decision is denied.

5

The Union's Proposal F is the remaining disputed proposal concerning the Outside Employment directive. Appendix A in the Police's standard operating procedure prohibited "9. Employment in establishments where alcoholic beverages are served for consumption on premises." J.A. 842. The directive relaxes the prohibition to read: "9. Employment in establishments where the primary business of the establishment is serving alcoholic beverages." J.A. 812. In Proposal F, the Union proposed to add the following definition for "primary business": "For the purposes of this provision, 'primary business' means the business from which the establishment earns the greatest percentage of its revenue." J.A. 819. The Compliance Board determined that the Police must bargain over this proposal.

When the Police argued that Proposal F interferes with its right to assign work, the Compliance Board disagreed:

> If the [Police] were to agree to adopt it, management may have to take some action to enforce the provision, such as determining whether an establishment earns the greatest percentage of its revenue from the sale of alcohol, or to defend itself if the Union files a grievance on behalf of an employee that management has disciplined for violating the provision. The [Police], however, would have to do as much with respect to item 9 even if Proposal F is not adopted.

J.A. 697–98. We see no reversible error in the Compliance Board's rejection of the management-rights argument. The proposal involves work that *other* employers might assign to Police employees, but it does not involve work assigned by the Police; and the need for management to devote staff time to rendering decisions about application of a policy—a near-universal need—does not, by itself, bring the policy within the § 7106(a)(2)(B) protection of management's right to "assign work." *See Nat'l Fed'n of Fed. Emps.*, 35 F.L.R.A. at 368. The scope and precision of an exclusion of establishments serving alcohol may be important issues, but Proposal F does not interfere with the Police's statutory rights.

The Police also argues that Proposal F is part of the Union's attempt to negotiate for non-bargaining-unit employees. We see no more merit to this argument for Proposal F than we do for Proposal K.

With respect to Proposal F, the Office of Compliance's petition to enforce the Compliance Board's decision is granted.

## D

In the Absence and Leave directive, one Union proposal is before us: Proposal I. The directive states that the "Capitol Police Board Regulations Prescribing a Unified Leave System for Employees of the United States Capitol Police" "should be referenced in conjunction with this Policy Directive." J.A. 179. In Proposal I, the Union proposed to make those regulations available for employee review on the Police's intranet. J.A. 186. The Compliance Board determined that the Police must bargain over this proposal.

In this court, the Police argues that Proposal I is outside the duty to bargain because its subject, including the directive to which it responds, are covered by the parties' collective bargaining agreement. But the Police forfeited

this argument. It did not raise the "covered by" doctrine for Proposal I before the Compliance Board. *See* J.A. 202–03 (the Police's position statement failing to mention the "covered by" doctrine under the section titled "Proposal I").

The Police did argue to the Compliance Board that Proposal I is outside the duty to bargain because the directive language at issue (quoted above) makes no change in conditions of employment. The Union responded that "employees for the first time are expressly responsible for following" a set of regulations. J.A. 13. The Compliance Board, in finding this proposal subject to the duty to bargain, did not make any factual findings about whether the directive actually made employees newly responsible for following the regulations. At oral argument in this court, counsel disputed whether inserting a cross-reference to the regulations in the directive constitutes a significant change for employees. *Compare* Oral Arg. at 1:38:00–1:38:07 (Counsel for the Police: "Employees aren't subject to the [Capitol Police] Board's regulations; they're subject to the Department's policy."), *with id.* at 1:44:07–1:44:16 (Counsel for the Office of Compliance: "I don't have access to the regulations. I don't know what they say. The regulations are not published regularly."); *see also id.* at 1:27:45–1:27:50 (Counsel for the Police: "A directive and a standard operating procedure both apply equally to employees."). Without the regulations in the record, we are unable to say whether the directive involves a change in the employees' conditions of employment.

With respect to Proposal I, we set aside the Compliance Board's order and remand for further proceedings on this issue.

## III

We have considered the parties' remaining arguments, but we find them unpersuasive. The Office of

Compliance's petition for enforcement is granted with respect to Proposals F, K, P, R, and S.  The petition for enforcement is denied with respect to Proposals D, E, G, H, L, and 8.  The Compliance Board's order with respect to Proposal I is set aside, and we remand for the Compliance Board to determine whether Proposal I involves a change in conditions of employment.

No costs.

**GRANTED IN PART, DENIED IN PART, SET ASIDE IN PART, AND REMANDED**